COURT OF APPEALS
DECISION
DATED AND FILED

**June 8, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1654-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF139

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

REBECCA SUE FERRARO,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: MARIA S. LAZAR and J. ARTHUR MELVIN, III, Judges. *Affirmed.*

¶1 GROGAN, J.[1] Rebecca Sue Ferraro appeals from a judgment entered after she pled no contest to operating a motor vehicle while under the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

influence, third offense, contrary to WIS. STAT. §§ 346.63(1)(a), 346.65(2)(am)3, and 343.301(1g). She also appeals from a postconviction order denying her motion seeking sentence modification.[2] Ferraro contends that her blood test result, which came back *after* her plea/sentence, constitutes a new factor warranting sentence modification because it showed a lower blood alcohol concentration (BAC) than her breath test. Because the blood test does not constitute a new factor that warrants sentence modification, this court affirms.

## I. BACKGROUND

¶2 On January 28, 2020, police arrested Ferraro for operating a motor vehicle while intoxicated, fourth offense. On that date, police received a report that a female diner had left a Delafield restaurant without paying for her meal. Police were told the driver left in a white Jeep Cherokee with an Illinois license plate and that she was staying at a nearby hotel. Police Officer Joseph Walker responded to the report and proceeded to the hotel where he observed a female in the driver's seat of a parked white Jeep Cherokee with Illinois plates. Walker identified the female as Ferraro, and she told the officer she had been at the restaurant and had consumed alcohol while there. Walker observed that Ferraro's speech was slurred and detected a strong odor of intoxicants on her breath.

¶3 Walker conducted field sobriety tests, which Ferraro failed. Ferraro submitted to a preliminary breath test (PBT) and blew a .213. Walker arrested Ferraro for operating while under the influence (OWI) and read her the Informing the Accused Form. When Ferraro refused to consent to a blood test, she was

---

[2] The Honorable Maria S. Lazar presided over the plea and sentencing hearings. The Honorable J. Arthur Melvin, III presided over the postconviction motion.

transported to the hospital. Walker obtained a search warrant, and Ferraro's blood was then drawn and sent to the state lab for analysis. The officer reviewed her driving record and found two prior OWI violations and two prior OWI convictions. Court records also showed that Ferraro had a pending OWI, third offense and with a minor passenger, in Rock County for which Ferraro had been released on a $2,000 signature bond in May 2019 with conditions that she maintain absolute sobriety and not operate a motor vehicle.[3] Ferraro was thereafter charged with OWI, fourth offense, and felony bail jumping.

¶4      Ferraro's initial appearance occurred on January 30, 2020, where the circuit court[4] set bail of $2,500, although it commented that amount may be "too low" given that Ferraro committed this offense while the Rock County case was pending and in violation of the terms and conditions set in the Rock County case. Ferraro was unable to post bond and sent numerous communications to the circuit court that expressed interest in resolving the case quickly. Her attorney filed a motion seeking to reduce bail, and at a February 14, 2020 hearing, the circuit court denied her request, explaining that "$2,500" was "more than fair" given her record and the pending Rock County OWI. Ferraro's lawyer made a speedy trial request at the same hearing. On February 18, 2020, Ferraro waived her preliminary hearing and, through her attorney, entered a not guilty plea and "ask[ed] for a plea and sentencing date." Ferraro asked for a date for plea/sentencing "this week" if available.

---

[3] Rock County case No. 2019CF496.

[4] Here, "circuit court" refers to the court commissioner who handled the initial appearance.

¶5      The State filed an Amended Information on February 20, 2020 changing the OWI, fourth offense, to an OWI, third offense. The Amended Information set forth the penalties associated with a third offense OWI as: (1) a fine of not less than $600 but not more than $2,000; and (2) prison time of "not less than 45 days nor more than one year in the county jail."

¶6      The plea hearing and sentencing occurred on February 20, 2020. Ferraro entered into a plea bargain with the State where she agreed to plead no contest to OWI, third offense, with the felony bail-jumping charge dismissed and read in. The State agreed to recommend a twelve-month jail sentence, thirty-six months of driver's license revocation, installation of an ignition interlock device, and attendance at a victim impact panel. The State would take no position on the fine amount except to request that $35 be paid to the Delafield Police Department to cover the cost of the blood draw.

¶7      The circuit court held a plea colloquy with Ferraro and explained the minimum and maximum penalties, which were consistent with the Amended Information. Ferraro agreed to the circuit court using the Amended Information and the Complaint as the factual basis for the charge. The court emphasized to Ferraro that there were "sufficient facts alleged in the amended information and the underlying complaint by which a trier of fact" could find her guilty of OWI, third offense. Ferraro personally acknowledged that she understood. The court accepted the plea and found Ferraro guilty of OWI. When the court asked Ferraro whether there was "any reason why [she] should not go to sentencing[,]" Ferraro personally responded, "No, your Honor." The court advised Ferraro that she had "20 days … in which to appeal the sentence" and that "20 means 20." Ferraro said she understood.

¶8    The matter proceeded immediately to sentencing. The State acknowledged mitigating factors as: (1) the distance Ferraro drove while intoxicated was short (only .3 miles), and there were "no reports of bad driving"; and (2) she was cooperative with police. The State saw the .213 PBT as an aggravating factor—"more aggravated than a regular third offense OWI." But the State noted "the most aggravating factor" was that "at the time of her arrest, at the time that she decided to get behind the wheel while under the influence … she was out of custody, subject to conditions of bail in … Rock County, where she had been charged with third offense OWI with a minor passenger." The State pointed out that Ferraro had "very simple rules" in the Rock County case—"absolute sobriety and absolutely no driving."

¶9    Ferraro's attorney then addressed the circuit court, acknowledging that "Ferraro does have an alcohol problem. She admits to that." Her attorney told the court that she "had been doing very well after being charged in Rock County[,]" but that her employer "needed her to work here in Waukesha[,]" and she chose to drive there from Green County, where she lived. He also said that Ferraro "admit[s] that it's likely … had we gotten all the evidence in this case and what the blood alcohol actually was through the testing, that it's likely that she could have been found guilty, so that's why she's here taking responsibility for that." Defense counsel asked for probation because probation would allow her to get treatment, noting she had been going to classes to address her alcohol problem. Defense counsel also asked that Ferraro be transferred to Green County and have work release privileges.

¶10    Ferraro personally addressed the court and explained she had been sober for 233 days before this incident and that she voluntarily had been trying to

deal with her alcoholism by going to Alcoholics Anonymous and getting a sponsor.

¶11 The circuit court then gave its sentencing remarks. It said it "looked to the Third Judicial District OWI/PAC Sentencing Guidelines for information and standards as amended in 2018 and first looks at mitigating and aggravating factors." It agreed with the defense that this case has "one big mitigating factor" and "one big aggravating factor, aside from the BAC of .213."[5] It went on to describe the aggravating factor as Ferraro being out on bond from another pending OWI third charge. It noted that Ferraro should not have even been *driving*, she should "not have been drinking[,]" and she "definitely" should not have been "drinking and driving." The court saw the mitigating factor as the short distance—about .3 miles—driven between the restaurant and the hotel with no bad driving reported. Despite this, the court expressed concern that Ferraro nevertheless "could have seriously injured, killed, or hurt someone or [her]self." The court also repeated its concern that Ferraro did this while the Rock County case was pending.

¶12 Based on these factors, plus Ferraro's "verifiable period of consistent sobriety," her record of two prior OWIs, and the third OWI currently pending, the circuit court rejected both the State's and the defense's sentence recommendations. It sentenced Ferraro to 250 days in jail with work release privileges, 36 months' revocation of her driver's license, 36 months' ignition interlock installation, and ordered "the lowest fee, which is still a high amount,

---

[5] This referred to the breath test, not the blood test, as the blood test results had not come back yet.

6

$1,800, plus $35 for the blood draw fee." The court told Ferraro she would be transferred to Green County.

¶13     Four days later, the police department received the blood-draw test results from the state lab, and the results showed Ferraro's BAC at the time of the draw to be .167. Ferraro filed a postconviction motion to modify her sentence, alleging the lower BAC constituted a new factor warranting sentence modification. The postconviction court denied the motion, ruling that the blood test result did not constitute a new factor and that even if it did, the result did not warrant sentence modification.[6] Ferraro now appeals.

## II. DISCUSSION

¶14     The issue on appeal is whether the circuit court erred in denying Ferraro's sentence modification motion alleging the blood test result constituted a new factor. "Deciding a motion for sentence modification based on a new factor is a two-step inquiry." *State v. Harbor*, 2011 WI 28, ¶36, 333 Wis. 2d 53, 797 N.W.2d 828. Whether a "fact or set of facts" "constitutes a 'new factor' is a question of law." *Id.* A "new factor" is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). The defendant

---

[6] The court notes the record reflects that Judge Lazar, who imposed the sentence, initially granted Ferraro's first motion for sentence modification. However, pursuant to Ferraro's request, Judge Lazar vacated that order in conjunction with granting her prior counsel's motion to withdraw and substitute in new counsel. Ferraro's new counsel then re-filed a motion seeking sentence modification, which was decided by Judge Melvin due to judicial rotation. Ferraro acknowledges that this appeal involves a review of Judge Melvin's postconviction decision.

bears the burden of establishing the existence of a new factor "by clear and convincing evidence[.]" *Harbor*, 333 Wis. 2d 53, ¶36.

¶15 If a new factor exists, the defendant is not automatically entitled to sentence modification. *Id.*, ¶37. "Rather, if a new factor is present, the circuit court determines whether that new factor justifies modification of the sentence." *Id.* Whether a new factor justifies sentence modification is within the circuit court's discretion. *Id.* When the circuit court concludes as a matter of law that there is no new factor, it is unnecessary to "determine whether, in the exercise of its discretion, the sentence should be modified." *Id.*, ¶38. "[I]f the court determines that in the exercise of its discretion, the alleged new factor would not justify sentence modification," it is unnecessary for the court to "determine whether the facts asserted by the defendant constitute a new factor as a matter of law." *Id.*

¶16 A new factor is defined as a fact unknown at the time of sentence that is highly relevant to the imposition of the sentence. Ferraro contends the lower BAC fits that definition. This court disagrees. Although the actual *blood* test result was unknown to the circuit court at the time of sentencing, that court knew that: (1) Ferraro had been driving while intoxicated; (2) her PBT was .213; (3) Ferraro had admitted she drank and drove; (4) she had failed field sobriety tests; and (5) she had violated the bond conditions set in her pending Rock County OWI case. Although the blood test showed a lower alcohol concentration than the PBT, it was still more than two times the legal limit.[7] The blood test result also

---

[7] Although Ferraro did not specifically waive use of the blood test results, based on the record, she was unquestionably aware at the time of her plea and sentencing that the blood test results had not yet been returned. Additionally, it is unclear from this record how much time had elapsed between the time of Ferraro's arrest and when her blood was actually drawn.

confirmed what the sentencing court already knew—that Ferraro drove while very intoxicated. Moreover, the sentencing court's concern focused primarily on the fact that Ferraro committed this offense while out on bond from another OWI, third offense, and while she was ordered not to drive at all. Ferraro's decision to drink and drive in violation of the Rock County bond order, together with the fact that Ferraro repeatedly violated OWI law, motivated the sentence imposed.

¶17     Even if the lower BAC qualified as a new factor, the postconviction court did not erroneously exercise its discretion when it concluded the lower result did not justify sentence modification. The blood test alcohol concentration, though lower than the breath test, was still more than twice the legal limit. The sentence Ferraro received was within the penalties statutorily prescribed for an OWI, third offense, and the Amended Information notified Ferraro of those specific penalties. Further, Ferraro sought to resolve this case quickly, as evidenced by her lawyer's request for a speedy trial, Ferraro's repeated communications to the circuit court while she was in jail, and a request for a plea/sentencing hearing the same week she waived her preliminary hearing. It is clear from the plea transcript that the parties knew the state lab had not yet provided the blood test result but that even absent this information, Ferraro wanted to resolve this case. Ferraro certainly could have delayed the sentence to wait for those results. When the sentencing court asked her directly if there was *any reason* to postpone sentencing, Ferraro responded that there was not. Based on all of these factors, the postconviction court did not erroneously exercise its discretion when it determined the lower blood test result, which came back postsentencing, did not warrant sentence modification.

*By the Court.*—Judgment and order affirmed.

9

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.